## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

DEXTER A. JONES,

             Plaintiff,

  v.

ALFRED LOBO, Individually & Official
Capacity; RONALD A. THOMAS,
Individually & Official Capacity; and MOST
WORSHIPFUL PRINCE HALL GRAND
LODGE OF FREE AND ACCEPTED
MASONS OF CT, INC.,

             Defendants.

3:12 - CV - 1034 (JBA)

## RULING ON PLAINTIFF'S MOTION TO FOR TEMPORARY RESTRAINING ORDER

HAIGHT, Senior District Judge:

### I.  INTRODUCTION AND FACTS

     Plaintiff Dexter A. Jones, appearing *pro se*, moves this Court for an Order directing each of

the several named Defendants to Show Cause why a Temporary Restraining Order ("TRO") and

Preliminary Injunction should not be entered against them with respect to circumstances and conduct

alleged in Plaintiff's Verified Complaint.  Doc. #1.

     Plaintiff filed his motion and the supporting documents in the New Haven Courthouse on

July 17, 2012.  The case was assigned by random to the Honorable Janet Bond Arterton, United

States District Judge.  Owing to Judge Arterton's temporary absence from the District, and because

she is also the Duty Judge for July, Plaintiff's motion was referred to the undersigned as a District

1

Judge at the same seat of court, for the purpose of considering Plaintiff's application for preliminary relief.  For the reasons that follow, the Court declines to enter a TRO.  I decide no other issue.  The file will be respectfully returned to Judge Arterton for further proceedings.

## II.   BACKGROUND

Reading Plaintiff's Complaint (Doc. #1) with the lenity traditionally accorded to *pro se* pleadings, it alleges that Plaintiff Dexter A. Jones has for approximately 15 years been a member of Freemasonry, a fraternal organization with a Grand Lodge and various local lodges located within the State of Connecticut and this District.  Plaintiff Jones, a United States citizen and a resident of New Haven, CT.,  is a member of Widow's Son Lodge No. 1, a Freemasonry lodge located in New Haven.  The Grand Lodge in the State is Defendant Most Worshipful Prince Hall Grand Lodge of Free and Accepted Masons of CT, Inc., a Connecticut corporation, with its headquarters located in Hartford, CT.  At the pertinent times, Defendant Alfred J. Lobo acted as the Interim Worshipful Master of Widow's Son Lodge No. 1.  Lobo is a citizen of the United States and a resident of of Hamden, CT.  Defendant Ronald A. Thomas acted as the Worshipful Grand Master of Most Worshipful Prince Hall Grand Lodge of Free and Accepted Masons of CT, Inc.  Thomas is a citizen of the United States and a resident of Meriden, CT.   Complaint, ¶¶ 7-11.

According to the Complaint, this case "arises out of disciplinary action taken by the defendant(s) officers" against Jones, as a member of Freemasonry. ¶ 13.  Specifically, the Complaint alleges that on March 27, 2012, Defendant Lobo issued an order suspending Jones on that day from Freemasonry "without formal charges or a hearing." ¶ 15.  A written Notice of Suspension Pending a Trial, Ex. C to the Complaint, on the Widow's Son Lodge stationary and addressed to "Past Master Dexter Jones," stated that Jones was "hereby suspended, pending formal charges and trial for un-

2

masonic conduct," and that "the formal charges will be read at our next communication (April 9, 2012), after which a copy will be given to you."  The Complaint further alleges that on April 9 Jones presented himself at the Lodge to hear the charges against him, but Lobo directed him to leave, and when Jones refused, Lobo called the police and threatened Jones with arrest.  Today, Jones remains under suspension, without first having any opportunity to be heard.  ¶¶ 16-17.

The Complaint and Jones's affidavit demonstrate graphically that being under Masonic suspension causes Jones great distress.  He misses the companionship and *joie de vivre* of Lodge life: the preamble to the Complaint recites that Jones "has missed the countless dinners, parties & other gatherings in this and other states as he is no longer welcomed at any official Masonic function or the event or function of a Mason," owing to the fraternal rule that "no Mason can communicate with a 'Brother' who has been suspended or expelled.  Every day that passes erodes friendships and relationships that have formed over the past 15 years . . . " Thus, a suspension such as that imposed by Lobo upon Jones becomes, even in advance of institutional trial and conviction, a self-executing condemnation and, within the context of Masonic community life, a near-capital punishment.  The emotional anguish felt by Jones is manifest from his court papers; and there is economic loss as well, as Jones asserts in an affidavit in support of his motion for an injunction at ¶ 3: "On a weekly basis I used to get phone calls for work doing photography however since the suspension compared to last year I'm down 80% for parties, weddings etc.  Many of the customers are other brothers from different lodges and different states."

Jones's Complaint alleges that the Defendants' conduct in suspending him violated procedural provisions of the Masonic Constitution and General Ordinances, and also violated provisions of the United States Constitution and the Connecticut Constitution.  The main thrust Plaintiff's

3

memorandum of law, pages 12-13, appears to be that "approximately on March 26, 2012" Jones posted two messages "via facebook" and that the order of suspension issued on March 27. The facebook messages are alleged to be "protected free speech by Dexter A. Jones"; the copies attached to the Complaint are illegible; the suspension is alleged to be retaliation against Jones for his exercise of that free speech. As for relief, the Complaint prays for an order rescinding Plaintiff's suspension from the Lodge by Defendants and restoring him to his original pre-suspension position. Plaintiff also prays for judicial declarations of his rights in manners consistent with his theories of the case. Complaint, ¶¶ 29-35.

### III.  DISCUSSION

A federal district court such as this one must examine every case when it is filed to determine if the case is within the court's "subject matter jurisdiction." In that context, "jurisdiction" means that the court has the power to hear and decide the case. "Subject matter" is legal shorthand for what the case is about.

It is generally said that a trial court maintained by one of the States of Union, such as Connecticut, is a court of "general jurisdiction," while a federal district court situated within that State is a court of "limited jurisdiction." These labels mean that a state court has power to hear and decide a broad range of cases having a sufficient connection with the State in question. A federal court, in conterast, has the power to hear and decide a case only if it is given power to do so by the Constitution of the United States or a statute enacted by the federal Congress. A federal district judge is required to consider each newly filed case and determine whether his or her court has the jurisdiction – that is to say, the power – to decide the case. If the federal district court has that power, the case proceeds before the assigned judge. If the court does not have subject matter

4

jurisdiction, the case must be dismissed, without prejudice to the plaintiff asserting the same claims before a court of competent jurisdiction, frequently a state court.

Criminal cases and civil cases are the two main categories of cases that come before courts. Plaintiff Jones's disputes with the Defendants give rise to a civil case.  Generally speaking, a federal district court's subject matter jurisdiction over civil cases depends upon federal statutes.   The two principal statutory provisions are 28 U.S.C. § 1331, which is captioned "Federal Question," and 28 U.S.C. § 1332, which is captioned "Diversity of Citizenship."  Federal Question jurisdiction exists because in § 1331 Congress gave the district courts "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."  Diversity of Citizenship jurisdiction exists because in § 1332 Congress gave the district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different states . . . "

In the present case, Jones asserts that his claims against the Grand Lodge and the individual Masonic officers, Lobo and Thomas, fall within federal question jurisdiction.  He cannot rely upon diversity of citizenship jurisdiction, because according to the allegations of the Complaint, Jones, the Grand Lodge, Lobo and Thomas are all citizens of the same state: Connecticut.[1]

Jones's claims against these Defendants are that their conduct violated his rights to free speech, assembly, equal protection of the laws, liberty and property: all secured to him by the United

---

[1] The Complaint speaks of the *residence* addresses of the individual parties.   For purposes of diversity jurisdiction, an individual's citizenship is determined by *domicile*, not residence.  An individual may have residences in more than one state, but can be legally domiciled in only one state.  We need not pursue the question further in this case, because there is no reason to believe that the required complete diversity of citizenship exists between the Plaintiff and the Defendants.

States Constitution and certain of its Amendments.   One may accept that the Defendants' acts had these adverse effects upon Jones, but they are the acts of private parties, directed against another private party, and the great weight of authority is that these constitutional guarantees do not apply to private entities, with the result that, as a matter of law, such conduct does not violate the Constitution.  *See, e.g., Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991) ("The Constitution structures the National Government, confines its actions, and, in regard to certain individual liberties, confines the actions of the States.  With a few exceptions, such as the provisions of the Thirteenth Amendment, constitutional guarantees of individual liberty and equal protection do not apply to the actions of private entities.") (citations omitted); *Hotel Employees & Restaurant Employees Union v.  City of New York Department of Parks and Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) ("It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state.") (citation and internal quotation marks omitted); *Vandermark v. City of New York*, 615 F.Supp.2d 196, 207 (S.D.N.Y. 2009) ("The First Amendment prohibits a state, as sovereign, from abridging an individual's right to associate with others in pursuit of a wide variety of political, social, economic, educational, and cultural ends. A First Amendment claim requires a showing of state action or private action taken under color of state law.") (citations and internal quotation marks omitted); *Tolbert v. Goode*, No. 1:08-1258, 2009 WL 3424329 ( S.D. West Va. Oct. 22, 2009)  ("Under Section 1983, liability attaches only to conduct occurring under color of State law.  Merely private conduct, no matter how discriminatory or wrongful, fails to qualify as State action.") (citation and internal quotation marks omitted).

"Section 1983" is a reference to the civil rights statute, 42 U.S.C. § 1983, which provides for suits in federal district courts for violation of individual constitutional rights "under color of" the law

of a state.  In *Edmonson,* the Supreme Court said at 500 U.S. 620:  "Although the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional restraints."  In the present case, there is no suggestion or indication that the conduct of officers of the Masonic lodges may be characterized as actions taken "with the authority of the government."

## IV.   CONCLUSION

In the light of the foregoing authorities, I am not satisfied that this Plaintiff's Complaint against these private, non-governmental defendants states a viable claim under the United States Constitution or federal statutes.[2]  In consequence, and notwithstanding  the strength and passion of Jones' s concerns, I am constrained to decline to sign an order for a temporary restraining order, or schedule a hearing on Plaintiff's motion for preliminary relief of any kind.

The file on this case is being respectfully returned to the Chambers of Judge Arterton.  The opinions expressed herein are mine, and binding on no other Judge.  I make no Order with respect to  Plaintiff's requests for leave to proceed *in forma pauperis* [Doc.  3] and for instructions on making service upon the Defendants.    They may be addressed upon Judge Arterton's return to the Court.    Plaintiff  should  address  all further  communications or applications on the case to the

---

[2] Plaintiff's claims that Defendants violated the Connecticut Constitution, and the Masonic Constitution and General Ordinances, may be presented to a Connecticut court, but they are not federal in nature and cannot support subject matter jurisdiction in this Court.  There is no basis for this Court to exercise supplemental jurisdiction over these state claims pursuant to 28 U.S.C. § 1367, since there is no federal jurisdiction to which supplemental jurisdiction might attach.

7

Chambers of Judge Arterton.

It is SO ORDERED.

Dated: New Haven, Connecticut
July 20, 2012

_/s/Charles S. Haight, Jr._
Charles S. Haight, Jr.
Senior United States District Judge

8